# EXHIBIT A

Case 1:06-cv-00478-S-LDA Document 68-3 Filed 01/31/2008 Page 1 of 19

117mac

1

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

JOHN MacARTHUR CA No. 06-478S

plaintiff

v PROVIDENCE, RI
JANUARY 17, 2008

O'CONNOR CORPORATION, et al

defendant

BEFORE MAGISTRATE JUDGE LINCOLN D. ALMOND

APPEARANCES:

| | |
|---|---|
| FOR THE PLAINTIFF: | THOMAS A. TARRO, III, ESQ.<br>Tarro Law Offices<br>300 Centerville Road<br>Warwick, RI 02886<br>401-737-7200 |
| FOR THE DEFENDANTS: | |
| O'CONNOR SAFETY CORP. | JOHN T. WALSH, JR., ESQ.<br>123 Dyer St.<br>Providence, RI 02903<br>401-272-3500 |
| FOR THE HARTFORD: | AMY A. PARKER, ATTY.<br>10 Weybosset St.<br>Suite 900<br>Providence, RI 02903<br>401-331-4660 |
| FOR O'CONNOR CORP. | DONALD J. MARONEY, ESQ.<br>146 Westminster St.<br>Providence, RI 02903<br>401-272-1312 |

2

JANUARY 17, 2008

Case 1:06-cv-00478-S-LDA Document 68-3 Filed 01/31/2008 Page 2 of 19

117mac

THE COURT: Good morning. You may be seated. We're here today in the matter of MacArthur vs O'Connor, et al, CA No. 06-478 S. We're here for argument today on defendants' joint motion to conduct a physical examination of plaintiff under Federal Rules of Civil Procedure 35. Can counsel please identify themselves for the record?

MR. TARRO: Thomas A. Tarro, III for the plaintiff John MacArthur.

MR. WALSH: John T. Walsh, Jr. for O'Connor Safety Corporation.

MS. PARKER: Attorney Amy Parker for The Hartford.

MR. MARONEY: Attorney Donald Maroney for O'Connor Corporation and O'Connor Constructors.

THE COURT: Who is going to argue for defendants today?

MS. PARKER: I will, your Honor.

THE COURT: All right. Argue from the podium. Please identify yourself again, please.

MS. PARKER: Amy Parker for the defendant The Hartford.

Your Honor, we're here on our motion for physical exam pursuant to Federal Rule 35 of the plaintiff John

3

MacArthur, and plaintiff's counsel, Mr. Tarro, has objected to that motion, and in his memorandum in support thereof is outlined several reasons why they have objected to our motion for a physical exam.

The first reason --

THE COURT: Before we get to the reasons, can you refresh my recollection as to the injuries that plaintiff alleges he suffered as a result of the accident?

MS. PARKER: Yes. He sustained a hip and knee injury.

THE COURT: All right.

MS. PARKER: A twisting injury when he fell down a set of -- allegedly tripped down a set of stairs. So those are the -- his knee and hip are the bodies at issue.

THE COURT: In terms of discovery in this action, what information has been obtained regarding those injuries and the physical status of the plaintiff?

MS. PARKER: I believe we retained -- we did a keeper of the records of Dr. Puerini. I think that was the plaintiff's primary care doctor.

THE COURT: All right.

MS. PARKER: Primacare Medical, Healthtrax



which I think is the health club that he belongs to, and we also have a report from Dr. Pizzarello who has been identified as a plaintiff's expert, and Dr. Pizzarello's deposition has been taken.

THE COURT: Okay. Explain to me what the good cause or reason is under Rule 35 for wanting to have Dr. Froehlich take a look at Mr. MacArthur.

MS. PARKER: Basically the good cause is the plaintiff is claiming lost earning and lost earning

Case 1:06-cv-00478-S-LDA Document 68-3 Filed 01/31/2008 Page 4 of 19

117mac

capacity in the amount of $357,544.40. He's alleging that he has been out of work since November of 2004 as a result of this accident and has not been able to return to work in any capacity. He's also claiming from the date of the accident to the present time, and in the future, pain and suffering in the amount of $200,000. So we've got $557.544.40 in losses based on his inability to -- his claim that he can no longer work, and pain and suffering -- and ongoing pain and suffering as a result of the injury.

THE COURT: What's Dr. Froehlich's specialty?

MS. PARKER: He's an orthopedic doctor, and actually I have with me a couple of documents. If you'll permit me, allow me to present them to the Court.

5

THE COURT: Yes. Just show them to Mr. Tarro first.

MS. PARKER: He has copies, as well as everybody else.

THE COURT: He has copies? All right. You can come forward and give them to my clerk, please.

MS. PARKER: The first is a letter from me to Mr. Tarro outlining the date, time and place of the exam, identifying Dr. Froehlich. He's with University Orthopedics. The second document, I just actually got that on-line. I do not have a copy of Dr. Froehlich's CV but one will be obtained, if the exam is allowed, which just identifies Dr. Froehlich's specialty in

orthopedics. He specializes in shoulders, knees and hips.

THE COURT: Isn't that a children's song?

MS. PARKER: Shoulders, knees and toes. I know it well.

THE COURT: Oh, sorry. All right.

MS. PARKER: The next document is Dr. Pizzarello's report which is a two-page report. Plaintiff was seen by Dr. Pizzarello on one occasion. Dr. Pizzarello has been identified as plaintiff's expert, and his report basically talks about some causal relationship from the injury to the accident but



it does not talk about any disability, any impairment ratings, his ability to work, his inability to work, et cetera.

THE COURT: Okay.

MS. PARKER: We intend that Dr. Froehlich to be our expert but in order to do so --

THE COURT: Let's finish going through these documents so I understand what you're giving me. Why are you giving me these interrogatory responses?

MS. PARKER: To show that plaintiff has identified Dr. Pizzarello as his expert in answer number 4.

THE COURT: Yup, I'm with you. And then the last thing is a --

MS. PARKER: The last thing is a case that was referred to you by the plaintiff in his memorandum, Curtner, if I'm saying it right.

THE COURT: Cutner.

MS. PARKER: Cutner vs Urban. He relies heavily on that case regarding the presence of attorney -- of an attorney being present at the exam.

THE COURT: All right. So those are the other issues he raises in addition to claiming a lack of good cause. He says that he should be there and it should be videotaped? What's defendants' position



regarding that?

MS. PARKER: Defendants would strongly protest the presence of a videotape at an exam. One, there is no case law supporting it. Two, I don't think any physician is going to allow it, and by not allowing it is going to prevent defendants from having the opportunity to have the plaintiff examined. The whole idea of videotaping a doctor examining a plaintiff is just unheard of. I've never heard of it before. I've never seen it done. I don't believe I've actually had another attorney try to tape-record a doctor's exam and the doctor refused to allow it. In Cutner, it talks about the presence of an attorney at an exam. In that case, the court actually does not allow it. They talk about the reasons when an attorney could possibly be present at a Rule 35 exam, and they say that good cause must be shown. The good cause that must be shown is some sort of prior history of impropriety by that particular physician, or a client that does not have -- is disabled, either physically or mentally disabled, or if there is -- the exam would be extremely embarrassing

or invasive in nature. Those are the reasons by the Court in Cutner said on certain occasions and under good cause an attorney or a third-party can be present at an exam. In that case they did not allow it, and



there's no evidence in this case that Dr. Froehlich has any impropriety in the past. There is no disability on the part of Mr. MacArthur that I'm aware of. And the exam is a simple orthopedic exam to examine his knee and hip.

THE COURT: All right. Any of the other defendants want to speak to the motion or do you want to rely on --

MR. WALSH: I'll just add, your Honor --

THE COURT: Why don't you identify yourself at the podium.

MR. WALSH: John Walsh on behalf of the defendant O'Connor Safety Corporation. This is almost shocking to read that these requests are being made. I have practiced law in Rhode Island for 40 years. These medical examinations by the other side, which are intended to verify, and intended to give the defendant the benefit of some informed ~~consent~~ judgement as to the nature of the injuries. They've been conducted for years and years, and 90% of them are done by a telephone call where the defendant's lawyer calls the plaintiff's attorney and says I'd like to set something up with Doctor So and So, and it's done, and now to take and inject into this arena a lawyer and a videographer and videotape equipment, first of all, that would have the

Case 1:06-cv-00478-S-LDA Document 68-3 Filed 01/31/2008 Page 8 of 19



affect, the chilling affect, on any physician who might intend to conduct this examination for the purposes of verifying injury or not.

Secondly, why is it that the plaintiff has to have everything that's said in this meeting verified with his attorney there, which is an intimidating procedure in and of itself to a physician when the plaintiff himself has been in the company of his own doctor, making his subjective complaints about his injuries and his pain, and it's been going on for months and years, maybe, and as a counterbalance to that they're arguing that -- and of course there was no attorney for the defense there. There was no physician for the defense. There was no videotape of the exam that was conducted by his own doctor, and whether it was perfunctory or whether it was thorough, or whatever, and yet the one occasion when the defendants seek to verify this has to be done in a circus atmosphere with an attorney and a videotape there? I submit, your Honor, there is no basis for this whatsoever on the facts of this case, and that this motion should be rejected. Thank you.

MR. MARONEY: Donald Maroney. Your Honor, may I just --

THE COURT: You may, sir.

10

MR. MARONEY: Your Honor, I echo the sentiments of my brother and sister, and I've been

practicing for 20 years, and I have never seen this request in this type of proceeding. However, the federal rules decision, the majority of the federal courts, have denied third parties to be present at a medical examination. And I'm quoting from the Federal Civil Rules Handbook 2008, and it states the clear majority of federal courts have refused to permit third-party observers at Rule 35 examinations. They quote Gensberg vs May Department Stores, 184 FRD 552. Eastern District of Pennsylvania 1999. Thank you, your Honor.

THE COURT: You're welcome, sir. Mr. Tarro.

MR. TARRO: Thank you, your Honor. Your Honor, I think the premise of Rule 35 is for the party proposing to have the impartial examination conducted to show good cause why the examination should be conducted, and there has not been any good cause shown here.

First of all, the doctor who has been identified has not been identified as an expert on behalf of these defendants. We don't know what his status is in this lawsuit. There has not been any Rule 26 disclosure that this individual has been identified as a person



who has knowledge concerning the facts of this case, that he has reviewed the medical records of the plaintiff, and has a need, or a requirement to examine him, to make a determination as to his current medical status.

Now in this particular case Dr. Pizzarello has

been identified as plaintiff's expert. He has subjected himself to a deposition at which time the defendants had the opportunity to completely and thoroughly examine him with regard to his opinions. Dr. Pizzarello's opinion concerning this man's disability, and the other medical records of Dr. Puerini, were considered by a vocational rehab expert, Al Sabella, who has been designated as an expert in this case.

THE COURT: Whose expert?

MR. TARRO: Plaintiff's expert.

THE COURT: All right.

MR. TARRO: And based upon those medical records, his review of the medical records, the opinion set forth by Dr. Pizzarello, he made a determination as to what types of work the plaintiff can subject himself to based upon the nature and extent of his injuries, his educational background, his work experience, and his physical ability today.

12

THE COURT: Don't the defendants have a right to test that? Are you saying they just need to accept what your medical expert and vocational expert has said?

MR. TARRO: No. I don't -- I'm not suggesting they don't have the right to test that, but I think they have to show this Court, or indicate to this Court, first of all, why is there a requirement for this examination, okay? If their expert has indicated he needs to examine him to determine his

Case 1:06-cv-00478-S-LDA Document 68-3 Filed 01/31/2008 Page 11 of 19



present current status, that's different. But we don't have any affidavit from the specialist indicating that he needs to, you know, examine him, and he can't rely upon the medical records and the deposition of Dr. Pizzarello.

Secondly, with regard to the extent and the scope of the examination, that has not been indicated. We don't know if he's going to conduct any specific types of testing, if he's going to subject him to x-rays. None of that has been set forth in any affidavit of the doctor.

Furthermore, I think it's incumbent upon the defendants to present to this Court some indication from the doctor whether or not he is intending on not only looking at this gentleman to determine his current



status but whether or not he's going to be designated as an expert to testify as to causation in this case. Is the purpose of this examination merely a discovery tool whereby he is going to question the plaintiff excessively and extensively concerning what happened, when it happened, what he did, what he didn't do, his prior medical history, all of that, and that's where it becomes important for the plaintiff's attorney to be present to determine to what extent and scope the examiner is turning the examination from one to determine his current status, to look at him, to examine him, to put him through range of motion tests, whatever, or alternatively to examine him in person. Now I've had this happen to me because I've been

present at examinations with doctors where they'll take one hour and they'll go through all of the facts of the case, they'll go through the person's prior history, all right, and the whole premise of the examination is for the purpose of determining his current medical status.

And in terms of attorneys being present at examinations, I've attended a number of them. I know in Rhode Island, at least in the Workers Compensation Court, there are, I think, rules that permit the attendance of attorneys or even physicians on behalf of

14

a party to attend an impartial examination. So, you know, I don't find that to be unusual.

With regard to the videotaping, you know, I've presented that as a request because I think there is some basis for that in the case law, and the whole purpose of that is to preserve to what extent the doctor is examining, performing a physical examination on the individual.

THE COURT: All right. Do you want to reply?

MS. PARKER: Yes.

THE COURT: All right. I'll give you a brief moment to reply. I also would like, if you could address, I'm looking at the memorandum submitted in support of your motion. You indicate that the need for the exam -- you can take the podium -- the need for the exam is to assess plaintiff's current medical status? In other words, what is the degree of impairment, if

Case 1:06-cv-00478-S-LDA Document 68-3 Filed 01/31/2008 Page 13 of 19



any, currently?

MS. PARKER: Yes.

THE COURT: All right. Is Dr. Froehlich going to attempt to offer any opinion on the issue of causation?

MS. PARKER: No.

THE COURT: What is going to be the extent



of the exam?

MS. PARKER: The extent of the exam would just be a normal orthopedic exam to determine the physical basis for his total and permanent disability. He is also going to opine on causation based on, I think, on plaintiff's prior medical condition, preexisting history, et cetera.

THE COURT: All right. So you're going to give all of the records to Dr. Froehlich. Dr. Froehlich is going to do a current exam?

MS. PARKER: Yes.

THE COURT: All right. Do you have any idea from Dr. Froehlich how long this exam is going to take?

MS. PARKER: No. Quite frankly, your Honor, it's quite difficult to schedule and coordinate these things with any doctor, and, you know, I can find out certainly before the exam takes place how long he needs, and I can set that forth for Mr. Tarro, along with if he wants to know the scope and, you know, things like that, the manner and condition of the exam. We have no problem providing that information prior to the exam once I have actually spoken with, you know,

Case 1:06-cv-00478-S-LDA Document 68-3 Filed 01/31/2008 Page 14 of 19



Dr. Froehlich, once he's had a chance to review the medical records, et cetera. He has not done that at this time. He has not yet been retained as an expert,



and he has not been identified as an expert at this time, and I don't believe Rule 35 requires that he has to be identified as an expert prior to examining the plaintiff.

I also think that it's imperative for him to examine the plaintiff in addition to his medical records just as plaintiff's expert did. Dr. Pizzarello did not just look at the plaintiff's medical records and render an opinion. He looked at the medical records and actually then examined the plaintiff. The same opportunity should be provided to our expert Dr. Froehlich.

THE COURT: All right.

MR. WALSH: May I just add to that, very briefly?

THE COURT: Briefly.

MR. WALSH: Just to put this in context for the Court. We took the deposition of Mr. MacArthur within the last week, and Mr. MacArthur has, since the time of this injury, been engaged in a regular workout routine at a gymnasium. His doctor's reports say that he goes to the gym six times a week and works out on a Stairmaster and other heavy duty machinery that is designed to create physical fitness, and we went through a litany of the types of things that he does on

a regular basis in this deposition which he admits to. And just reading that deposition testimony would lead one to believe that this man is not disabled for anything. So that this is the background here, and this is why this examination, free from intimidation by an attorney, free from intimidation by a videographer or a recorder, or anything like that, should go forward.

THE COURT: I met Mr. MacArthur, and I doubt Dr. Froehlich would intimidate him, so I'm not concerned about that.

MR. WALSH: No, no, I mean the attorney and the videographer intimidating the doctor in this atmosphere we're in today. That is not something that the doctor wants to deal with, a videographer and a lawyer coming into his office during the time that he is conducting an examination. Thank you.

MR. TARRO: Your Honor?

THE COURT: Very briefly.

MR. TARRO: The problem here is that there are statements being made, and I don't agree with attorney Walsh in terms of the extent and nature of my client's ability to perform physical activity at this time, and the reason why he is going to the health facility because that's part of his rehabilitation

18

program. But for the defendants to come here before this Court, as I indicated before, they have to show

good cause, and they said, they indicated in their memo that his physical conditions are in controversy. But we know what his injuries are but we have no one that has been retained by the defendants that have indicated what specific injuries are in controversy. Is it the knee? Is it the hip? He also sustained a low back injury, all right? I think they have a requirement to present to this Court some basis for which the examination should be conducted. I mean if there's a controversy, what is in dispute? What is their medical expert said is disputed? Is the fact that this hip, okay, has healed? His hip injury has healed? Or his hip injury is not injured to the extent that precludes him from doing certain type of activities?

THE COURT: It sounds like there is a major dispute as to his ongoing degree of impairment and that would relate to his substantial lost wage claim.

THE COURT: No, it's not. It's his ability. It's not his impairment. It's ability to work as an iron worker. That's what's in dispute. His testimony and his position is that he is unable to return to work as an iron worker. He can do light sedimentary types of jobs, but based upon his experience, his age and his

19

physical limitations there are certain limited types of jobs that he can do, all right? The dispute is with the vocational rehabilitation expert not with the medical expert. There's a distinction.

THE COURT: All right.

MR. WALSH: One minute?

THE COURT: No. Enough. All right, I've looked through the papers. I've had this prior issue argued before me by Mr. Tarro in another case where I protected his client from a Rule 35 examination. In that case my recollection was the defendant's cause for the examination was that their expert needed to conduct the physical examination in order to render an opinion but the expert had already rendered a definitive opinion so I found no good cause and denied the request. I see this case as being different and distinct from that case. The defendants have shown good cause given the areas in dispute and I believe that plaintiff in his opposition concedes that defendant's physical injuries are matters in controversy in the action, and given the claims, I believe defendants have substantiated good cause under Rule 35. What plaintiffs haven't done is have not specified as required by the rule the time, place, manner, conditions and scope of the examination.



They've identified the person by whom it's going to be made. So I'm going to grant the motion but I'm going to condition it defendants providing a more detailed letter that complies with Federal Rules of Civil Procedure 35 to plaintiff in advance of that examination so that the plaintiff has the notice required. As to the request to videotape the examination, I'm going to deny that request. And I'm also going to deny the request for counsel to be present at the examination. I will issue a very brief

117mac

electronic order setting forth that ruling later today as to the letter. You're not allowed to go forward with the examination until you get him the letter, so the sooner you get him the letter, then you can move forward. All right, Court will stand in recess.

(RECESS)

21

C E R T I F I C A T I O N

I, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

____________________________

JOSEPH A. FONTES, COURT REPORTER

____________________________

DATE

117mac