UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| John MacArthur,<br>　　　Plaintiff,<br><br>　　v.<br><br>O'Connor Corporation,<br>O'Connor Constructors, Inc., and<br>O'Connor Safety Corporation,<br>　　　Defendants/<br>　　　Third-party Plaintiffs<br><br>　　v.<br><br>The Berlin Steel Construction<br>Company and Hartford Fire<br>Insurance Company,<br>　　　Third-party Defendants | C.A. No.   06-478 S |

## MEMORANDUM AND ORDER

William E. Smith, United States District Judge.

Before the Court is Third-party Defendant, Hartford Fire Insurance Company's, Motion for Summary Judgment. In the underlying third-party action for breach of contract, the Third-party Plaintiffs (collectively "O'Connor") allege that the Hartford Fire Insurance Company has a duty to defend and/or indemnify them in a negligence action brought by John MacArthur.[1]  O'Connor believes that they qualify as additional insureds on a commercial general liability policy issued by Hartford to one of O'Connor

---

[1] After the hearing on this motion, O'Connor Corporation successfully moved to amend its third-party complaint and re-add The Berlin Steel Construction Company as a party to this litigation. (First Amended Third-Party Complaint (Doc. 108).)

Corporation's subcontractors, The Berlin Steel Construction Company ("Berlin").[2]   Hartford disagrees and argues that the O'Connor defendants do not qualify as additional insureds because the allegations in MacArthur's Complaint fall outside of the policy.

After careful consideration, the Court concludes that coverage does not exist as a matter of law and therefore Hartford has no duty to defend O'Connor.

I.   Background

The following facts are undisputed.  Plaintiff John MacArthur is suing O'Connor for injuries he sustained while working on a construction site that O'Connor managed as a general contractor. At the time of his injury, MacArthur worked for Berlin, a subcontractor for the O'Connor Corporation.

MacArthur's Complaint alleges one count of negligence against the O'Connor defendants: that on September 23, 2005 at the Brayton Point Power Plant he tripped, fell and was injured on a set of temporary wooden stairs that had been constructed by O'Connor

---

[2]   The subcontract agreement requiring the policy to be purchased was executed between O'Connor Corporation and Berlin. O'Connor Safety Corporation contends that the subcontract agreement reflects an intent to make both O'Connor Constructors and O'Connor Safety Corporation proper insureds under the policy and Hartford has not challenged this assertion.  Therefore, the Court assumes the parties agree that the subcontract agreement and the policy contemplate all Third-party Plaintiffs as intended additional insureds.  Compare A.F. Lusi Constr., Inc. v. Peerless Ins. Co., 847 A.2d 254, 258 (R.I. 2004) (holding that coverage did not exist because the relevant contract language did not evidence a clear intent by the insurance company and the subcontractor to designate the general contractor as an additional insured under the policy).

Constructors.  MacArthur's specific theory of liability is that "[O'Connor], their agents, servants, and/or employees" negligently caused his injury by breaching certain duties.[3]

The O'Connor defendants believe that they are entitled to defense and, if ultimately held liable for MacArthur's injuries, indemnity under the terms of a commercial general liability policy purchased by Berlin.  Pursuant to a subcontractor agreement, O'Connor Corporation required Berlin to add it as an additional insured on the policy.  Berlin complied with this requirement and purchased an appropriate policy from Hartford.

The additional insured endorsement of Berlin's policy describes who qualifies as an additional insured.  In pertinent part, the endorsement states:

1.  WHO IS AN INSURED SECTION (II), item 5, is deleted and replaced by the following:
   5.  The entity named in the schedule above with whom you agreed pursuant to a written contract, written agreement or permit, to provide insurance such as is afforded under this policy, but: only to the extent that such person or organization is liable for your acts or omissions with respect to:
      a.  Your ongoing operations performed for that additional insured; or
      b.  "Your work," included within the "products-completed operations hazard," but only to the extent required by such

---

[3] MacArthur alleges several duties: the duty to keep the construction site in a reasonably safe condition, the duty to inspect for defects, and to the duty to warn of dangerous or unsafe conditions existing on the job site.  (Amended Complaint (Doc. 31) at pages 4-5.)

             written contract, written agreement or
             permit, or
     c.   The acts or omissions of the additional
             insured(s) in connection with the general
             supervision of such operations, and
     d.   At the location(s) designated above or
             facilities owned or used by you.

(Def. Hartford's Mot. For Summ. J., Ex. E, (Doc. 93-7)).

The policy also states that Hartford will pay those sums that the insured becomes legally obligated to pay as damages because of bodily injury or property damage to which the insurance applies, and that Hartford will have a right and duty to defend the insured against any suit seeking those damages. Of course, Hartford does not have a duty to defend against suits seeking damages to which the insurance does not apply.

The crux of the dispute is whether the conduct alleged brings the O'Connor defendants within the terms of coverage as additional insureds under the language of the endorsement.

II.  <u>Summary Judgment Standard</u>

Summary judgment is appropriate "if the pleadings, depositions, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue of fact is "genuine" if it "may reasonably be resolved in favor of either party," <u>Vineberg v. Bissonnette</u>, 548 F.3d 50, 56 (1st Cir. 2008) (citation omitted), and an issue of fact is "material" "only when

it possesses the capacity, if determined as the nonmovant wishes, to alter the outcome of the lawsuit under the applicable legal tenets." Roche v. John Hancock Mut. Life Ins. Co., 81 F.3d 249, 253 (1st Cir. 1996). When deciding a motion for summary judgment, the Court reviews the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in the nonmoving party's favor. Cadle Co. v. Hayes, 116 F.3d 957, 959 (1st Cir. 1997).

III. Analysis

In a coverage dispute such as this, the first task is to examine the policy language to determine the scope of coverage. In construing insurance agreements, the policy language is examined in its entirety and all words are given their plain meaning. Town of Cumberland v. R. I. Interlocal Risk Mgmt. Trust, Inc., 860 A.2d 1210, 1215 (R.I. 2004). Judicial construction is unnecessary where the policy terms are clear and unambiguous. Merrimack Mut. Fire Ins. Co. v. Dufault, 958 A.2d 620, 625 (R.I. 2008). Ambiguity only exists when the terms are susceptible to more than one reasonable interpretation. Id.

The policy language at issue is the additional insured endorsement. Here, the disagreement boils down to the meaning of the "is liable for your acts or omissions" language in item 5 of the additional insured endorsement. Hartford argues that this language means that coverage is limited to those instances where

O'Connor is found to be vicariously liable for the acts or omissions of Berlin.  O'Connor urges a broader reading that would allow for coverage in situations where liability is premised on joint and several liability or any other theory of liability.

After reviewing the policy language at issue, the Court concludes no ambiguity exists and that the additional insured endorsement means what it says and clearly restricts coverage to situations where O'Connor is liable for the acts or omissions of Berlin.  In the Court's view, this language means vicarious liability.  Vicarious liability by definition is "liability that a supervisory party (such as an employer) bears for the actionable conduct of a subordinate or associate (such as an employee) based on the relationship between the two parties."  Black's Law Dictionary 934 (8th Ed. 2004).  This definition comports exactly with the language of the additional insured endorsement because O'Connor is only covered in those instances when they are liable for the conduct of Berlin, their subordinate.

To accept O'Connor's interpretation that the "is liable" language could mean joint and several liability or any other form of liability would ignore the "acts or omissions" clause, the plain meaning of which operates to limit coverage.  O'Connor's argument would render the "acts or omissions" language meaningless and violate the fundamental tenant that all words of an insurance

contract must be given effect.[4]   See Aetna Cas. & Sur. Co. v. Sullivan, 633 A.2d 684, 686 (R.I. 1993) (stating that a court will accord equal importance to all relevant parts of insurance policies and will not view words in isolation or take phrases out of context).

Other courts interpreting similar policy language have also reached this result. In A.F. Lusi, the Rhode Island Supreme Court, construing a similar additional insured clause, intimated the policy in that case did not cover a general contractor for its own negligence and only provided limited coverage. A.F. Lusi Constr., Inc. v. Peerless Ins. Co., 847 A.2d 254, 264 (R.I. 2004) (stating that the additional insured endorsement only provided limited coverage and did not cover claims of direct negligence against a general contractor). Likewise, in Consolidation Coal, the court held "the most appropriate construction of the subject phrase is

_____

[4] Furthermore, the Court believes O'Connor misunderstands joint and several liability and vicarious liability as being interchangeable. Vicarious liability is a legal fiction by which one may be found liable for the acts of another. See DelSanto v. Hyundai Motor Fin. Co., 882 A.2d 561, 566 (R.I. 2005) (vicarious liability arises simply by the operation of law and is derivative of the wrongful act of the agent). Joint and several liability, on the other hand, characterizes liability after it is found to exist. A person must first be found liable before it can be said he or she is jointly and severally liable. See Black's Law Dictionary 933 (8th Ed. 2004) (defining joint and several liability as liability that may be apportioned either among two or more parties or to only one or a few select members of the group, at the adversary's discretion); see also Calpine Corp. v. Ace Am. Ins. Co., No. C 05-00984 SI, 2007 WL 3010570, at *5 (N.D. Cal. Oct. 12, 2007) (discussing the differences between joint and several liability and vicarious liability).

that [the general contractor] was to be an additional insured under the defendant's policy only when the negligent acts or omissions of [the subcontractor] directly caused [the general contractor's] loss." Consolidation Coal Co. v. Liberty Mut. Ins. Co., 406 F. Supp. 1292, 1299 (W.D. Pa. 1976). The court further noted that the effect of the words "acts or omissions" and the words "but only" and "with respect" qualified the extent of the coverage and the extent to which plaintiff was an additional insured. Id. These reasoned decisions buttress the Court's interpretation of the policy language in this case that coverage exists only in those instances where the O'Connor defendants are held liable for the acts or omissions of Berlin.

Turning to the issue of whether Hartford must defend O'Connor in this case, the duty to defend standard in Rhode Island is well-settled. Whether a duty exists is determined by laying the complaint alongside the policy; if the allegations in the complaint fall within the risk insured, the insurer must defend. Progressive Cas. Ins. Co. v. Narragansett Auto Sales, 764 A.2d 722, 724 (R.I. 2001); Peerless Ins. Co. v. Viegas, 667 A.2d 785, 787 (R.I. 1995); see also Emhart Indus., Inc. v. Home Ins. Co., 515 F. Supp. 2d 228, 236 (D.R.I. 2007). Any doubts as to the adequacy of the pleadings are resolved against the insurer and in favor of its insured. Allstate Ins. Co. v. Russo, 641 A.2d 1304, 1306 (R.I. 1994).

8

All that is required under the pleadings test is that the allegations in the complaint be potentially within the policy's risk of coverage. Emhart, 515 F. Supp. 2d at 236-37. If such a potential exists, "the insurer must defend irrespective of the insured's ultimate liability to the plaintiff." Peerless, 667 A.2d at 787 (quoting Employers' Fire Ins. Co. v. Beals, 240 A.2d 397, 402 (R.I. 1968)). Although this standard may require an insurer to defend "groundless, false or fraudulent" suits, the insurer remains duty bound. Sanzi v. Shetty, 864 A.2d 614, 618 (R.I. 2005).

MacArthur's Complaint alleges that O'Connor, its agents, servants, and/or employees had a duty to keep the premises safe, to inspect for defects, and to warn of dangerous or unsafe conditions existing on the job site. While the Complaint names only O'Connor as defendants, it clearly alleges liability based on the failures of O'Connor's agents -- and Berlin could be such an agent. Hartford has completely overlooked the allegations against O'Connor's agents and instead argues in conclusory fashion that the Complaint plainly asserts only claims of direct negligence against the Defendants. But it is possible to read the Complaint in such a way that O'Connor's liability is based on Berlin's failure to warn MacArthur of the alleged defect in the staircase. In the Court's view, such an allegation fairly raises at least the potential for O'Connor's vicarious liability for the action (or inaction) of Berlin. That is, MacArthur alleged that O'Connor

constructed the stairs and as an employee of Berlin he used them. The Complaint suggests that Berlin had a duty to warn of any dangerous or unsafe conditions, which would include defects in the stairs. This alleged failure by Berlin, in its capacity as O'Connor's agent, arguably makes O'Connor vicariously liable under the theory that the principal (O'Connor) is responsible for the acts of its agent (Berlin) -- here, the failure to warn. See Russo, 641 A.2d at 1306 (stating that doubts as to the adequacy of the pleadings are resolved against the insurer). It is a convoluted theory to be sure, but applying the pleadings test, at least at the outset of this litigation, Hartford had a duty to defend.

The litigation, however, has progressed well beyond its nascent stages and Hartford is now seeking a determination that as a matter of law, even viewing the undisputed facts in a light most favorable to O'Connor, the policy cannot provide coverage to O'Connor. Clearly there is more to the case than simply the Complaint and the policy. Ordinarily, courts are forbidden from considering extrinsic facts to determine if a duty to defend exists. See Emhart, 515 F. Supp. 2d at 239-40 (stating Rhode Island courts generally condemn the use of extrinsic facts not asserted in the complaint to determine whether a duty to defend exists); see also O'Donnell v. Twin City Fire Ins. Co., 40 F. Supp. 2d 68, 71 (D.R.I. 1999); Flori v. Allstate Ins. Co., 388 A.2d 25,

26 (R.I. 1978).  However, in certain cases undisputed extrinsic facts may be used to determine whether as a matter of law coverage does or does not exist.  See Emhart, 515 F. Supp. 2d at 238-39, 242-43 n.18, 249 ("[O]nce triggered, the duty to defend continues until a finding that the claims do not fall within the risk of coverage."); Providence Journal Co. v. Travelers Indem. Co., 938 F. Supp. 1066, 1074, 1079 (D.R.I. 1996) (deciding applicability of pollution exclusion clause as a matter of law); see also Conway Chevrolet-Buick, Inc. v. Travelers Indem. Co., 136 F.3d 210, 213-15 (1st Cir. 1998) (recognizing under Massachusetts law that an insurer can "get clear of" the duty to defend by demonstrating not from the face of the complaint but as a matter of fact that no claim within the policy exists) (citing Sterilite Corp. v. Cont'l Cas. Co., 458 N.E.2d 338, 343-44 (Mass. App. 1983)); Montrose Chem. Corp. v. Superior Court, 861 P.2d 1153, 1159 (Cal. 1993) (agreeing with lower court that "where extrinsic evidence establishes that the ultimate question of coverage can be determined as a matter of law on undisputed facts, [there is] no reason to prevent an insurer from seeking summary adjudication that no potential for liability exists and thus that it has no duty to defend").  Thus the Court's present task is not to simply administer the pleadings test; rather it is to evaluate both MacArthur's Complaint and the evidence submitted, assess the undisputed factual record and determine if a potential for coverage can be said to no longer exist as a matter

of law.  Emhart, 515 F. Supp. 2d at 239; see 14 Couch on Insurance § 200:47 (Lee R. Russ, et al. eds. 3d ed. 1995) ("[A]n insurer's duty to defend arises out of a potentially covered claim and lasts until the conclusion of the underlying lawsuit, or until it has been shown that there is no potential for coverage.").  Certainly, if material facts central to the issue of indemnity are disputed, then this cannot be determined at the summary judgment stage.  Such was the situation in Emhart, for example, and a trial was required.  The duty to defend then continued until the jury verdict in the insurer's favor.  But where there are no disputed issues of material fact, the issues may be joined at the summary judgment stage.

As discussed above, the policy in issue only provides coverage for those instances where O'Connor is liable for the acts or omissions of Berlin.  O'Connor argues that ample evidence exists for a jury to conclude that MacArthur's injury was directly and proximately caused by Berlin.  O'Connor points to deposition testimony that suggests Berlin employees observed a defect on the stairs prior to MacArthur falling and injuring himself and O'Connor maintains that Berlin employees never reported such a defect. O'Connor also presented evidence that suggests Berlin employees had a duty to report perceived safety hazards to O'Connor because Berlin was required to comply with O'Connor's safety plan. O'Connor contends that because Berlin failed to warn either

12

O'Connor or MacArthur of the defective stairs it can be held liable and that such liability is covered by the policy. Thus O'Connor, a general contractor, is essentially arguing that it can be held vicariously liable for the acts or omissions of Berlin, a subcontractor, because Berlin failed to warn O'Connor about the defective stairs.

Under Rhode Island law, a general contractor is generally not liable for the torts of its subcontractor. Konar v. PFL Life Ins. Co., 840 A.2d 1115, 1117 (R.I. 2004); E. Coast Collision & Restoration, Inc. v. Allyn, 742 A.2d 273, 275 (R.I. 1999). There are, however, several exceptions that have been recognized by the Rhode Island Supreme Court, which include: (1) when the employer is subject to a non-delegable duty; (2) when the work preformed is by its very nature, likely to cause harm unless proper precautions are taken; (3) when the work preformed is unquestionably inherently dangerous; (4) where the owner of a structure, without formally accepting the contractor's work, assumes practical control by appropriating it to the use for which it was built. Ballet Fabrics, Inc. v. Four Dee Realty Co., 314 A.2d 1, 6-7 (R.I. 1974) (internal citation omitted); see also Restatement (Second) of Torts Introductory Note to §§ 416-429 (stating the exceptions are rules of vicarious liability that make an employer liable for the negligence of the independent contractor, irrespective of whether

the employer is at fault).  Through the development of its common law, Rhode Island has carved out a limited exception to the general rule for situations where the risk is recognizable in advance, or when the employer has special reason to contemplate such a risk under the particular circumstances under which the work is being done.  <u>Ballet Fabrics</u>, 314 A.2d at 7; <u>E. Coast Collision</u>, 742 A.2d. at 276.  An example may be helpful to explain how the exception could work.  Where a contractor constructing a highway uses a subcontractor to dynamite a tunnel, and injury or property damage results, it could easily be said the work was inherently dangerous, and there may be reason to contemplate the high degree of risk.

In order for O'Connor to invoke the exception to the general rule barring a general contractor's liability for the torts of its subcontractor, it must show that Berlin's failure to warn somehow fits under this common-law exception.  It is not enough for O'Connor to suggest that coverage exists because there is a "potential" for vicarious liability based on Berlin's failure to warn.  Rather, at the summary judgment stage O'Connor must put forth at least enough evidence to allow a jury to conclude that the general rule does not apply.  O'Connor has not met this burden. All the evidence submitted, when viewed in a light most favorable to O'Connor, at best suggests that Berlin employees failed to warn about a defect in the stairs.  That is, Berlin employees used the stairs, noticed the defects, and failed to tell O'Connor about

14

them.  Even if it can be said that Berlin's failure was a but-for cause of MacArthur's injury, at best the failure was a "common risk[] to which persons in general are commonly subjected by the ordinary forms of negligence which are usual in the community" and is insufficient to hold a general contractor liable.  Restatement (Second) of Torts § 416 cmt. d.  Nothing O'Connor has presented suggests the work being preformed was inherently dangerous or even posed a peculiar risk.  A risk of harm is a peculiar risk when it arises from something other than a normal or routine matter for customary human activity.  See id. § 413 cmt. b., § 416 cmt. b. Furthermore, it cannot be said that evidence submitted fairly raises the applicability of any other exception.  Therefore, because the risk of harm that arises from Berlin's failure to warn does not bring the circumstances of this within an exception, no vicarious liability can exist and Hartford is entitled to summary judgment on the issue of coverage.[5]  Because coverage has been held

---

[5] O'Connor's two remaining arguments that (1) pursuant to the indemnity provisions of the subcontractor agreement coverage exists, and (2) the principle of equitable estoppel prevents Hartford from denying coverage, fail to persuade otherwise. O'Connor's first argument that the indemnity provisions of the subcontractor agreement somehow create coverage glosses over the fact that Hartford was never a party to the subcontractor agreement and is therefore not bound by its terms.  As for the second argument, that the certificate of insurance Hartford issued serves as a basis for estoppel, O'Connor ignores the fact that the certificate unambiguously states that "the insurance afforded by the policies described herein is subject to all the terms, exclusions and conditions of such policies."  (Third-Party Pl. O'Connor Safety Corp.'s Opp'n Mem., Ex. E, (Doc. 97-6).)  The doctrine of estoppel "cannot be used to enlarge coverage beyond

not to exist as matter of law, Hartford is relieved from any duty to defend.

VI.  Conclusion

For the foregoing reasons, Hartford's Motion for Summary Judgment is GRANTED.


It is so ordered.

_William E. Smith_
William E. Smith
United States District Judge
Date: 7/14/09

---

that which is set out in the policy." Gen. Acc. Ins. Co. of Am. v. Am. Nat'l Fireproofing, Inc., 716 A.2d 751, 755 (R.I. 1998). Therefore, because the Court has determined that coverage under the policy does not exist as a matter of law, the doctrine of estoppel cannot create coverage where none exists.